**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

MAIDA'S BELTS AND BUCKLES, INC., §
§
    *Plaintiff,* §
§    Civil Action No. 4:22-cv-00577
v. §
§    Jury Trial Demanded
LASTING DESIGNS, LLC d/b/a/ MAIDA'S §
§
    *Defendant.* §

---

## DEFENDANT'S ANSWER,
## AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
## TO PLAINTIFF'S ORIGINAL COMPLAINT
## FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

---

Defendant, Lasting Designs, LLC d/b/a Maida's ("Defendant"), by and through its undersigned counsel, submits the following answer, affirmative defenses and counterclaims to the allegations set forth in the Complaint by Maida's Belts and Buckles, Inc. ("Plaintiff").

<u>PREAMBLE</u>

The initial paragraph of the Complaint is not numbered and is a narrative and/or sets forth alleged legal conclusions for which no answer is required. To the extent that an answer is required, Defendant denies the allegations contained in the preamble of the Complaint. Defendant also objects to the ambiguity of the reference as to what constitutes "Maida's trademarks (MAIDA'S mark")" but assumes for purposes of this Complaint (and thus for answering this Complaint) that Plaintiff is referring to the marks in Plaintiff's trademark registrations in suit, rather than to "MAIDA'S BELTS AND BUCKLES." Defendant however denies that Plaintiff has a valid trademark of any kind in "MAIDA'S."

1

<u>PARTIES</u>

1.      Defendant admits the allegations contained in Paragraph 1 of the Complaint.

2.      Defendant admits the allegations contained in Paragraph 2 of the Complaint, except that the registered agent for service of process should be served at Defendant's address.

<u>JURISDICTION AND VENUE</u>

3.      Defendant admits the allegations contained in Paragraph 3 of the Complaint.

4.      Defendant admits that this Court has personal jurisdiction over Defendant, and that it operates a retail locale in Houston, Harris County, Texas.  Defendant denies all other allegations contained in Paragraph 4 of the Complaint.

5.      Defendant admits only that venue is proper in this district as it is the district in which Defendant resides as specified in 28 U.S.C. § 1391.  Defendant denies all other allegations in Paragraph 5 of the Complaint.

<u>THE [ALLEGED] MAIDA FAMILY HISTORY</u>

6.      Defendant admits the allegations contained in Paragraph 6 in part, but denies that the allegations are complete or fairly stated.   Defendant admits that John Laureto Maida worked in downtown Houston repairing shoes about 1906, that he was a cobbler and leather craftsman and had great skill and devotion to his craft.  Defendant adds that John Laureto Maida was a shoe maker and that he opened "Maida & Cuccia Shoe Makers," which also did shoe repairs, but denies the name of the shop was "Maida & Cuccia Shoe Repair."  Defendant admits that Jason Maida is the great grandson of John Laureto Maida.  Articles of Incorporation for Defendant, Maida's Belts and Buckles, Inc., were filed with the Texas Secretary of State on November 9, 1998 (and dated November 6, 1998), not in 1990, and those articles of incorporation named Joe S. Maida, not Jason Maida, as the incorporator.  On information and belief, Defendant admits

that Jason Maida is a principal of Plaintiff.  Defendant lacks sufficient information to admit or deny whether Jason Maida opened "Maida's Belts and Buckles" in 1990, or what it offered for sale then if anything at that time, and therefore denies those allegations.  On information and belief, Jason Maida learned the craft of handmade custom belts from members of the Maida family associated with Defendant, although on information and belief he may have worked for a time at the Houston Shoe Hospital, which repairs shoes.   Defendant admits that a line of the Maida family extends to Defendant as well as to Plaintiff. Defendant admits that the Maida family is well known in Houston, Texas for leather crafting of custom and bespoke shoes and boots and related accessories.  Defendant is believed to be the oldest bespoke shoe and boot maker in the United States, having been in business itself and through its predecessors-in-interest continuously, at least since about 1901, and dating back to Salvator Maida in 1883.  Defendant and its predecessors-in-interest have made shoes and boots and related accessories for a number of nationally and internationally known celebrities over the years.  Defendant denies all allegations contained in this paragraph 6 not specifically admitted.

PLAINTIFF AND ITS [ALLEGEDLY] "DISTINCTIVE" MAIDA'S "MARK"

7.      Defendant lacks sufficient information to admit or deny whether Jason Maida opened "Maida's Belts and Buckles" in 1990, and therefore denies that allegation in Paragraph 7. Defendant admits that Maida's Belts and Buckles, Inc. was founded and formed or organized as a corporation in Texas on November 9, 1998.  Defendant objects to the allegation that, "Born from a storied family history dating back to 1906, [Plaintiff] Maida's [Belts and Buckles, Inc.] continued that family history in the Houston community in the business of hand crafting belts and buckles, one customer at a time, in Houston and the surrounding area, across the country, and even in foreign countries," as vague and ambiguous in referring to "continuing that family

3

history," and therefore Defendant denies this allegation. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegation of Paragraph 7 that Plaintiff hand crafted belts and buckles in, or had customers in or from, "Houston, and the surrounding area, across the country, and even in foreign countries," and therefore Defendant denies that allegation. The Maida family history that Plaintiff and Defendant share is based on shoe and boot making and repair, with belt making an accessory item related to and extending from that shoe and boot making. Defendant admits that Plaintiff hand crafts or has hand crafted belts and buckles for customers over time. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegation that Plaintiff "prides itself in the care and craftsmanship it provides its customers by hand crafting its belts and buckles one at a time," and therefore denies that allegation. Defendant denies all allegations contained in Paragraph 7 of the Complaint not specifically admitted.

8. Defendant lacks sufficient knowledge or information to form a belief sufficient to admit or deny the allegations of Paragraph 8 and therefore denies those allegations, except that Defendant admits that Plaintiff is the stated owner of U.S. Trademark Registration Nos. 5,348,998, and 5,348,999, each said to be filed Dec. 21, 2016 and registered on Dec. 5, 2017.

9. Defendant admits that U.S. Trademark Registration Nos. 5,348,998, and 5,348,999 state on their face the goods and services listed in Paragraph 9 and that Exhibits A and B appear to be true copies of these registrations as provided on the website of the United States Patent and Trademark Office. Defendant denies the registrations are valid and subsisting and denies any other remaining allegations contained in Paragraph 9 of the Complaint.

10. Defendant lacks sufficient knowledge or information to form a belief sufficient to admit or deny the allegations of Paragraph 10, and therefore denies those allegations, except that Defendant admits that Plaintiff currently has an internet website at <maidasbelts.com>.

11. Defendant denies the allegations contained in Paragraph 11 of the Complaint.

DEFENDANT'S [ALLEGED] "WRONGFUL" ACTS

12. Defendant denies the allegations contained in Paragraph 12 of the Complaint, except that Defendant admits that its principals and Plaintiff's principals are believed to have some common ancestry.

13. Defendant denies the allegations contained in Paragraph 13 of the Complaint, except that Defendant admits that it and its predecessors-in-interest have used "MAIDA'S" since at least 1983, and has also used "MAIDA'S CUSTOM FOOTWEAR" in association with custom and bespoke boots and shoes and related accessories which include without limitation belts, wallets, purses, and bags, and that Defendant operates a "showroom" and place of business located at 3729 Westheimer Road, Houston,Texas 77027, which is less than three miles from Plaintiff's place of business. Plaintiff, not Defendant, is a junior user of "MAIDA'S."

14. Defendant objects to the allegations contained in Paragraph 14 of the Complaint as vague and ambiguous in referring to "affiliation" (since Plaintiff has already noted the parties' principals are in the same Maida family) and setting forth alleged legal conclusions to which no answer is required. To the extent that an answer is required, Defendant denies the allegations contained in Paragraph 14.

15. Defendant admits that it filed a Petition for Cancellation of Plaintiff's federal trademark registrations nos. 5,348,998 and 5,348,999 [the registrations on which Plaintiff relies in this lawsuit] with the United States Patent and Trademark Office. Plaintiff obtained an order

from the U.S. Patent and Trademark Office Trademark Trial and Appeal Board to suspend that Cancellation proceeding pending the resolution of this lawsuit.   Defendant admits citing its own trademark of a stylized "M" in association with "making and selling shoes and boots and related products and accessories."  Defendant denies that this is the only claim or unregistered "mark" cited by Defendant as a basis for cancellation of Plaintiff's registration.  Defendant also cited "MAIDA'S" as a common law word "mark" in association with "making and selling shoes and boots and related products and accessories."  Defendant admits that it uses "Maida's" word mark identical to "Plaintiff's word mark "Maida's."  On information and belief, Plaintiff does not use Defendant's stylized "M" mark.  Defendant denies that it offers "identical and competing goods and/or services" as Plaintiff, as Defendant makes and sells shoes and boots and Plaintiff does not make shoes or boots.  Defendant admits that it makes and sells leather goods such as purses, handbags, pocketbooks, bolo ties, hat bands, belts, ammunition or bullet bags, key fobs, journal covers, and other accessories in association with Defendant's custom and bespoke boot and shoe making, but Defendant lacks sufficient information or knowledge to form a belief as to whether Plaintiff sells any of those items except that Defendant admits that Plaintiff sells belts. Defendant denies that it is a junior use of the "mark" MAIDA'S."  Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in this Paragraph 18, and objects to the allegations overall as assuming legal conclusions couched to lead to misleading answers, such as referring to Defendant as a "junior" user of the MAIDA'S mark when Defendant is not the "junior" user of the MAIDA'S mark, and thus Defendant denies all allegations contained in this Paragraph 15 not specifically admitted.

16.     Defendant denies the allegations contained in Paragraph 16 of the Complaint.

17.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint and must therefore deny same, except that Defendant admits that Plaintiff and Defendant have some of the same customers and that both Plaintiff and Defendant operate their physical locations on the street called Westheimer in Houston, Texas.

18.     Defendant admits the allegations contained in Paragraph 18 of the Complaint.

19.     Defendant objects to the allegations contained in Paragraph 19 as setting forth or otherwise including a legal presumption or conclusion that is incorrect and to which no answer is required.  To the extent that an answer is required, Defendant denies the allegations contained in Paragraph 19 of the Complaint.

[ALLEGED] EFFECT OF DEFENDANT'S [ALLEGED] WRONGFUL ACTS

20.     Defendant denies the allegations contained in Paragraph 20 of the Complaint.

21.     Defendant denies the allegations contained in Paragraph 21of the Complaint.

22.     Defendant denies the allegations contained in Paragraph 22 of the Complaint.

23.     Defendant denies the allegations contained in Paragraph 23 of the Complaint.

24.     Defendant denies the allegations contained in Paragraph 24 of the Complaint.

25.     Defendant denies the allegations contained in Paragraph 25 of the Complaint.

26.     Defendant denies the allegations contained in Paragraph 26 of the Complaint.

27.     Defendant denies the allegations contained in Paragraph 27 of the Complaint.

28.     Defendant denies the allegations contained in Paragraph 28 of the Complaint.

29.     Defendant denies the allegations contained in Paragraph 29 of the Complaint.

30.     Defendant denies the allegations contained in Paragraph 30 of the Complaint.

31.     Defendant denies the allegations contained in Paragraph 31 of the Complaint.

32. Defendant denies the allegations contained in Paragraph 32 of the Complaint.

33. Defendant denies the allegations contained in Paragraph 33 of the Complaint.

34. Defendant denies the allegations contained in Paragraph 34 of the Complaint.

35. Defendant denies the allegations contained in Paragraph 35 of the Complaint.

36. Defendant denies the allegations contained in Paragraph 36 of the Complaint.

37. Defendant denies the allegations contained in Paragraph 37 of the Complaint.

COUNT I
FEDERAL TRADEMARK INFRINGEMENT
OF REGISTERED MAIDA'S MARKS
UNDER 15 U.S.C. § 1114

38. Defendant incorporates by reference its responses to Paragraphs 1-37 and the Preamble of the Complaint.

39. Defendant denies the allegations contained in Paragraph 39 of the Complaint.

40. Defendant admits the allegations contained in Paragraph 40 of the Complaint.

41. Defendant admits the allegations contained in Paragraph 41 of the Complaint.

42. Defendant denies the allegations contained in Paragraph 42 of the Complaint, except that Defendant admits that the registrations have not yet been revoked or cancelled.

43. Defendant denies the allegations contained in Paragraph 43 of the Complaint.

44. Defendant denies the allegations contained in Paragraph 44 of the Complaint.

45. Defendant denies the allegations contained in Paragraph 45 of the Complaint.

46. Defendant denies the allegations contained in Paragraph 46 of the Complaint.

COUNT II
FALSE DESIGNATION OF ORIGIN
UNDER 15 U.S.C. § 1125(a)

47. Defendant incorporates by reference its responses to Paragraphs 1-46 and the Preamble of the Complaint.

48.     Defendant denies the allegations contained in Paragraph 48 of the Complaint.

49.     Defendant denies the allegations contained in Paragraph 49 of the Complaint.

50.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50 and therefore denies the allegations of Paragraph 50.

51.     Defendant denies the allegations of Paragraph 50 except that Defendant admits that both Plaintiff and Defendant use "MAIDA'S," which is the last name of principals of both parties, in connection with their respective businesses.

52.     Defendant denies the allegations contained in Paragraph 52 of the Complaint.

53.     Defendant denies the allegations contained in Paragraph 53 of the Complaint.

54.     Defendant denies the allegations contained in Paragraph 54 of the Complaint.

55.     Defendant denies the allegations contained in Paragraph 55 of the Complaint.

56.     Defendant denies the allegations contained in Paragraph 56 of the Complaint.

57.     Defendant denies the allegations contained in Paragraph 57 of the Complaint.

58.     Paragraph 58 of the Complaint states a legal conclusion for which no answer is required.  To the extent that an answer is required, Defendant denies the allegations contained in Paragraph 58 of the Complaint.

59.     Defendant denies the allegations contained in Paragraph 59 of the Complaint.

60.     Defendant denies the allegations contained in Paragraph 59 of the Complaint.

COUNT III
COMMON LAW TRADEMARK INFRINGEMENT

61.     Defendant incorporates by reference its responses to Paragraphs 1-60 and the Preamble of the Complaint.

62.     Defendant denies the allegations contained in Paragraph 62 of the Complaint.

63.     Defendant denies the allegations contained in Paragraph 63 of the Complaint.

64.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64 and therefore denies the allegations of Paragraph 64.

65.     Defendant denies the allegations contained in Paragraph 65 of the Complaint.

66.     Defendant denies the allegations contained in Paragraph 66 of the Complaint.

67.     Defendant denies the allegations contained in Paragraph 67 of the Complaint.

68.     Defendant denies the allegations contained in Paragraph 68 of the Complaint.

69.     Defendant denies the allegations contained in Paragraph 69 of the Complaint.

## COUNT IV
## COMMON LAW UNFAIR COMPETITION

70.     Defendant incorporates by reference its responses to Paragraphs 1-69 and the Preamble of the Complaint.

71.     Paragraph 71 of the Complaint states a legal conclusion for which no answer is required.  To the extent that an answer is required, Defendant denies the allegations contained in Paragraph 71 of the Complaint.

72.     Defendant denies the allegations contained in Paragraph 72 of the Complaint.

## COUNT V
## UNJUST ENRICHMENT

73.     Defendant incorporates by reference its responses to Paragraphs 1-72 and the Preamble of the Complaint.

74.     Paragraph 74 of the Complaint states a legal conclusion for which no answer is required.  To the extent that an answer is required, Defendant denies the allegations contained in Paragraph 74 of the Complaint.

## GENERAL DENIAL

Defendant denies each factual allegation in the Complaint that is not specifically admitted and demands strict proof thereof.

## ANSWER TO PLAINTIFF'S PRAYER FOR RELIEF

Defendant denies that Plaintiff is entitled to the judgment and relief prayed for in Paragraphs A-I on pages 13-15 of the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants state the following affirmative and other defenses:

1. Plaintiff obtained U.S. Registration No. 5,348,998 for the word mark MAIDA'S and U.S. Registration No. 5,348,999 for the stylized script mark *Maida's* fraudulently. Plaintiff made material representation in each of the trademark applications for these registrations to the United States Patent and Trademark Office, on December 21, 2016, that, "The mark has become distinctive of the goods/services through the applicants [sic] substantially exclusive and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least the five years immediately before the date of this statement [the application]," when Plaintiff knew that the representation was false as to each of the trademark applications, and knew that Defendant (through Defendant's predecessors) had used MAIDA'S in word form and in stylized script form in association with its business, prior to Plaintiff's first use, and that Defendant was using MAIDA'S in word form and in stylized script form at the same time that Plaintiff was making application to the United States Patent and Trademark Office for the registrations. Plaintiff nevertheless made the false representation intentionally to deceive the United States Patent and Trademark Office to cause the United States Patent and Trademark Office to allow the applications to issue as registrations by overcoming an expected

11

rejection of the applications based on descriptiveness of the alleged mark MAIDA'S in word and stylized script form because MAIDA'S is primarily a surname. Plaintiff also knew that Defendant made and sold accessories associated with Defendant's custom and bespoke shoes and boots and that such accessories overlapped with the products and services that Plaintiff was listing as associated with its alleged marks in the trademark applications. Plaintiff knew that the marks he sought to register were not distinctive as to it and that it did not have, and still is not entitled to have, exclusive use of the marks.

2. Defendant's use of the word form and stylized script form of MAIDA'S charged by Plaintiff to be an infringement is instead a fair use, a non-trademark, descriptive use of a surname of Defendant's principals and persons in privity and/or association and/or affiliation with Defendant who are providing the goods and services offered by Defendant, as it was for Defendant's predecessors-in-interest.

3. Defendant (including Defendant's predecessors-in-interest) used the mark "MAIDA'S in both word mark and stylized script form prior to filing and prior to issuance of the trademark registrations in suit and with no actual or constructive knowledge that Plaintiff was claiming "MAIDA'S" as its exclusive trademark.

4. Defendant (including Defendant's predecessors-in-interest) used the mark "MAIDA'S in both word mark and stylized script form prior to the first use of "MAIDA'S" by Plaintiff and even before Plaintiff was organized.

5. Plaintiff's MAIDA'S and *Maida's* marks that are the subject of U.S. Registration No. 5,348,998 and U.S. Registration No. 5,348,999 respectively are invalid and not entitled to trademark protection because the marks are merely a surname which lacks secondary meaning with respect to Plaintiff.

12

6. Plaintiff's has used its registered "MAIDA'S marks to misrepresent the source of the goods/services that Plaintiff offers.

7. Plaintiff's claims are barred by the doctrine of unclean hands.

8. Plaintiff's Complaint is barred, in whole or in part, by the equitable doctrines of acquiescence, laches or estoppel.

9. Plaintiff's unjust enrichment claims fail on grounds that such claims are not an independent cause of action under Texas law.

10. Plaintiff's unjust enrichment claims fail because any use by Defendant of MAIDA'S in word or script form has been lawful and so it is not unjust for Defendant to retain any benefit received from its efforts under Texas law.

11. Plaintiff's claims relating to alleged unfair competition under Texas common law are barred at least in part by the applicable two-year statute of limitations period.

12. Plaintiff's common law unfair competition claims in Count IV are preempted by federal law.

13. Any remedy under Plaintiff's common law unfair competition claims are limited to Texas activities.

14. Plaintiff's common law trademark infringement claims in Count III are preempted by federal law.

15. Any remedy under Plaintiff's common law trademark infringement claims are limited to Texas activities.

16. Plaintiff's federal and state law claims are redundant and thereby improperly seek duplicative or redundant damages.

17. Plaintiff's claims are barred at least in part by the statutes of limitation applicable to the claims.

18. Plaintiff's federal claims improperly seek duplicative or redundant damages.

19. Plaintiff's state law claims improperly seek duplicative or redundant damages.

20. Plaintiff's claims constitute trademark misuse.

21. Plaintiff's claims for injunctive relief lack reasonable basis or merit.

22. All relief should be denied Plaintiff under principles of equity.

23. Plaintiff's claims are frivolous or in bad faith because Plaintiff's claims are based on false allegations which Plaintiff knew to be false at the time Plaintiff made the allegations.

24. Plaintiff's claims are frivolous or in bad faith because Plaintiff knew facts that would defeat the claims at the time of filing of this lawsuit, but Plaintiff filed the lawsuit anyway.

25. Defendant respectfully reserves the right to assert additional affirmative defenses based upon further investigation and discovery, at which time Defendant will seek to amend this Answer to add such additional defenses.

## COUNTERCLAIMS

For its counterclaims against Counterclaim Defendant, Maida's Belts and Buckles, Inc. ("Counterclaim Defendant"), Counterclaim Plaintiff, "Lasting Designs, LLC, d/b/a Maida's, ("Counterclaim Plaintiff") alleges as follows:

### Jurisdiction

1. This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

**Parties**

2.      Counterclaim Plaintiff, Lasting Designs, LLC, d/b/a Maida's is a limited liability company duly organized and existing under the laws of the State of Texas, having an office and place of business at 3729 Westheimer Rd, Houston, TX 77027.

3.      Counterclaim Defendant, Maida's Belts and Buckles, Inc., is a corporation duly organized and existing under the laws of the State of Texas, having its principal place of business at 5727 Westheimer Rd # K, Houston, TX 77057.

**Factual Background**

***The Maida Family***

4.      Counterclaim Plaintiff, Lasting Designs, LLC d/b/a "Maida's," itself and through its predecessors-in-interest, is believed to be the oldest family owned and continuously operating boot and shoe company in the United States.

5.      The majority of Counterclaim Plaintiff's 264 step process of shoe and boot making still uses equipment and techniques that are the exact same ones Counterclaim Plaintiff and its predecessors-in-interest have used for more than 100 years.

6.      Counterclaim Plaintiff hand crafts boots and shoes in the fine tradition of authentic master boot makers in its facility in Houston, Texas.

7.      The family patriarch of Counterclaim Plaintiff's principals and persons related to those principals was Salvator "Sam" Maida, who immigrated to Houston, Texas from Sicily, Italy about 1883, when Houston was less than about fifty years old.  He started a joint venture service called Maida & Cuccia in downtown Houston where he was the boot and shoe maker and J.C. Cuccia did cleaning and laundry.  By 1892, Sam Maida's son, John, joined him at age 10, and by age 14, John was apprenticing in boot and shoe making under his father until Sam's death

15

in 1901. John L. Maida then built a quality brand and became Houston's premier boot and shoe maker.

8. With the industrial revolution, the mechanization process for shoes and boots was largely complete by the turn to the 20th century and mass-produced footwear rather than custom made footwear became the norm. Custom shoe makers would not repair footwear they did not make to order and so John L. Maida saw an opportunity in shoe repair, as that service did not then exist for mass manufactured footwear.

9. About 1906, John L. Maida launched Houston Shoe Hospital which grew into multiple locations around Houston and provided necessary shoe repair services.

10. John L. Maida's son Salvador Maida, Sr. took over the custom shoe and boot making shop when he was 19 years old and later made boots for some nationally known celebrities of the 1950's, including cowboy movie star Gene Autry, and later movie star Ben Johnson. Salvador Maida, Sr. taught his son Salvador Maida, Jr. the art of hand made boot and shoe making and Salvador Maida, Jr. continued the family business, in the European tradition of handing down a business through the years from fathers to sons.

11. By about 1977, Salvador Maida Jr. was making boot patterns, measuring feet, pre-cutting and dying material, including the skins of calves, snakes and ostriches, and trimming the works to fashion boots. He made boots for the Archbishop of Canterbury, and a number of entertainers and musicians, including Mac Davis, Crystal Gayle, Billy Gibbons and the ZZ Top group, among others desiring custom boots and shoes, and not just western boots, but dress boots and shoes as well. Salvador Maida, Jr. is now the oldest living family member associated with Counterclaim-Plaintiff.

12. Salvador Maida Jr.'s son Salvador Maida III, and grandson Salvador Maida IV in turn learned the art of custom boot and shoe making from their fathers Salvador Maida, Jr. and Salvador Maida III respectively, and are also associated with Counterclaim-Plaintiff in this lawsuit, as is Camilla Maida, Salvador Maida, III's mother.

13. Salvador Maida Jr.'s son Vince Maida continues the family business of repairing boots and shoes in Houston, Texas, operates Maida's Shoe & Boot Repair, and has a business address at 3733 Westheimer, Houston, Texas 77027. He and his business are affiliated with Counterclaim-Plaintiff.

14. Salvador Maida Jr.'s brother John L. Maida, continued work with Houston Shoe Hospital rather than pursuing the trade of custom boot and shoe making, and John L. Maida eventually sold at least some of his interest in the Houston Shoe Hospital to third parties. John L Maida's son, Jason Maida, is principal of Counterclaim Defendant, Maida's Belts and Buckles, Inc.

15. Salvador Maida Jr. taught his nephew Jason Maida, principal of Counterclaim Defendant, how to make belts, and mentored him, and encouraged him in business.

16. On information and belief, Jason Maida and Counterclaim Defendant have never themselves custom made shoes or boots.

17. At the time of this lawsuit, the Maida family, through Counterclaim Plaintiff's line, has been custom making boots and shoes in Houston, Texas for five to six generations. The Maida family story and their custom footwear business have been the topic of a number of public interest newspaper stories and "where-to-go-to-buy custom footwear" articles in magazines over the years. Examples from the internet are at https://www.cntraveler.com/shops/houston/maidas and https://www.washingtontimes.com/news/2016/nov/7/generations-old-houston-boot-business-

broadens-its/ copied respectively at Exhibits 1 and 2, and older paper examples are at Exhibits 3, 4, 5, and 6.  Counterclaim Plaintiff has also continued the tradition of making custom footwear for nationally known celebrities, including in recent years, for example, Miranda Lambert.

### *The Business of Counterclaim Plaintiff,* *Lasting Designs, LLC d/b/a Maida's*

18.     Salvador Maida, Jr. incorporated Maida's Black Jack Boot Co. in Texas in 1983 and opened a store front in Highland Village Shopping Center in Houston, Texas, called "Maida's," offering custom boot and shoe making services and related leather accessories such as belts, purses, handbags, wallets, pocketbooks, hat bands, key fobs, bolo ties, journal covers, koozies, coasters, and ammunition bags.   He also later opened a large "Maida's" workshop/factory/warehouse for making the custom boots and shoes and related accessories on Blalock Street in Houston, Texas.  Over the years, Salvador Maida, Jr. moved the Highland Village "Maida's" store to a nearby location on 3738 Westheimer, still in the Highland Village area and still called "Maida's."  A photograph of the Highland Village storefront is attached as Exhibit 7.

19.     Counterclaim Plaintiff, Lasting Designs, LLC, organized in Texas in 2010, acquired all of the assets of Maida's Black Jack Boot Co., and opened a "Maida's" showroom at the Blalock workshop/factory/warehouse location.  The "Maida's" store in the Highland Village area was closed about that same time.  A photograph of the Maida's showroom at the Blalock workshop location is attached at Exhibit 8.

20.     Counterclaim Plaintiff uses a stage coach replica with a sign on its door saying "Custom Boot & Shoe Makers *Maida's* Since 1901" in advertising and as a mobile showroom

and fitting studio at events such as games at the Houston Polo Club. See photos and screenshots from Counterclaim Plaintiff's Facebook pages at Exhibit 9.

21. Counterclaim Plaintiff additionally has a bus/truck, which it has taken to events such as the Fashion Truck Society Festival with a sign on its side saying "Maida's Custom Footwear 1901," and which Counterclaim Plaintiff has also used in advertising and as a mobile showroom and fitting studio. See photos and screenshots from Counterclaim Plaintiff's Facebook pages at Exhibit 10.

22. In 2016, Counterclaim Plaintiff opened a "Maida's" store at 3233 Westheimer, again in the Highland Village area and since then has expanded into its current location at 3729 Westheimer in the Highland Village area, in Houston, Texas. A photo of this storefront is attached as Exhibit 11.

23. Counterclaim Plaintiff and its immediate predecessor-in-interest Maida's Black Jack Boot Co. have always use "Maida's" as their tradename for their custom footwear—continuously since Maida's Black Jack Boot Co. was organized in 1983.

24. Counterclaim Plaintiff's principals and Maida family members associated and/or affiliated with Counterclaim Plaintiff have always used "Maida's" to refer to themselves in connection with offering custom footwear services—that is, in connection with offering custom and handmade bespoke boots and shoes and in offering accessories complementing those boots and shoes, especially belts, purses, handbags, wallets, pocketbooks, key fobs, hat bands, bolo ties, journal covers, koozies, coasters, and bullet or ammunition bags. Example Facebook posts and advertisements are copied at Exhibit 12.

25. The trade of custom boot and shoe making has been handed down from father to son in the Maida's family, which is Counterclaim Plaintiff's family, for five to six generations in

Houston, Texas. Those fathers and sons repeatedly have had the surname "Maida" and have used their surname in offering their customized shoe and boot making services over the many years.

26. The public have come to associate the name "Maida's" with Counterclaim Plaintiff and its principals and associated family members as a source of fine, customized, shoes and boots and skilled leather crafting extending to leather accessories, which can complement those custom made shoes and boots.

27. The public associates the name "Maida's" with Counterclaim Plaintiff's principals and associated family members who are skilled at making custom shoes and boots. The public recognizes that "Maida" is a surname and the last name of those principals and family members.

## FIRST COUNTERCLAIM
## Declaratory Judgment of Trademark Fair Use

28. Counterclaim Plaintiff hereby incorporates by reference and re-alleges its allegations of Paragraphs 1-27, inclusive, as though fully set forth.

29. Counterclaim Plaintiff brings this counterclaim against Counterclaim Defendant to stop the assertion of baseless claims by Counterclaim Defendant in an attempt to disrupt Counterclaim Plaintiff's business. Counterclaim Defendant has through misrepresentation and improper use of its trademark registrations sought to interfere with Counterclaim Plaintiff's continued use of the last name of its principals and their associated and affiliated family members who work in or with Counterclaim Plaintiff's business of making custom footwear and particularly bespoke boots and shoes and related accessories for customers, continuing that trade of custom boot and shoemaking, handed down for five to six generations.

30. Counterclaim Plaintiff, like its predecessor-in-interest, Maida's Black Jack Boot Co., uses "MAIDA'S" as its tradename, on its storefront, as its domain name, <www.maidas.com>, in social media, and in other advertising.

31. Counterclaim Plaintiff, through its predecessor-in-interest, Maida's Black Jack Boot Co., obtained the website <www.maidas.com> in 1996 and was innovative in then making available for purchase on-line hand crafted leather goods such as belts with buckles and similar accessories associated with custom made footwear. Counterclaim Plaintiff's predecessor-in-interest and Counterclaim Plaintiff have continued that website ever since and that website currently includes a selected line of custom footwear that can be ordered online.

32. "MAIDA'S" is the last name of Counterclaim Plaintiff's principals and its predecessor's principals and of persons currently in privity or other association or affiliation with Counterclaim Plaintiff, in offering the services of custom footwear and related accessories to the purchasing public. "MAIDA'S" describes to that purchasing public that this company acting through these persons whose last name is "Maida," are of the same "Maida" family that has been providing these same high quality custom footwear services for many years.

33. Counterclaim Plaintiff, like its predecessor-in-interest, Maida's Black Jack Boot Co., uses "MAIDA'S" in its business to advise the purchasing public that they can expect the same quality in their custom footwear that this same family has provided at least since 1901 and intends to continue to provide.

34. Counterclaim Plaintiff uses "MAIDA'S" fairly and in good faith only to describe its goods and services.

35. The purchasing public knows the surname "MAIDA" to indicate a family who has handed down the skill, dedication, and trade of custom boot and shoe makers and related

accessories for many years, spanning generations of the same family for over a hundred years, and who provides those same services and products still.

36. Counterclaim Defendant's actions have given rise to an actual and justiciable controversy pursuant to 28 U.S.C. § 2201 et seq.

37. Counterclaim Plaintiffs seek a declaration that Counterclaim Plaintiff's reference to "MAIDA'S" in describing its custom footwear services and related products and accessories, is a fair use and not an infringement of Counterclaim Defendant's federally registered trademarks that are the subject of U.S. Trademark Registration Nos. 5348998 and 5348999, and does not constitute unfair competition with Counterclaim Defendant.

38. Counterclaim Plaintiff has been forced to defend this federal action for alleged infringement of registered trademarks, unfair competition, and unjust enrichment of Counterclaim Defendant. Thus, Counterclaim Plaintiffs has been injured by Counterclaim Defendant's misrepresentations.

**SECOND COUNTERCLAIM**
**Declaratory Judgment of Trademark Registration Invalidity**

39. Counterclaim Plaintiff hereby incorporates by reference and re-alleges its allegations of Paragraphs 1-38, inclusive, as though fully set forth.

40. Counterclaim Plaintiff has been damaged by and believes it will continue to be damaged by registration of "MAIDA'S," in stylized script form and in any other word form, that is the subject of respective United States Trademark Registration Nos. 5348998 and 5348999. These registrations should be canceled. 15 U.S.C. § 1064.

41. These Registrations issued less than five years ago, on the same day, December 5, 2017, and have not obtained incontestable status.

42. These Registrations issued with each stating association of the respective marks with the same list of goods and services and the same alleged date of first use and first use in interstate commerce of 00/00/1990. Such date is many years _after_ Counterclaim Plaintiff through its predecessors-in-interest began continuously using "Maida's" as a tradename for its custom footwear services and associated products. Counterclaim Plaintiff and its predecessor-in-interest based this tradename on the surname of the principals and persons in privity with the principals that were providing those services having the surname "Maida's." For Counterclaim Plaintiff and its predecessor-in-interest, the tradename "Maida's" has also become a "trademark" for its services and products.

43. Registration No. 5348998 covers or pertains to any appearance of the word mark "MAIDA'S. Registration No. 5348999 covers or pertains to a stylized script version of the mark "MAIDA'S. Counterclaim Plaintiff and its predecessor-in-interest Maida's Black Jack Boot Co. have continuously shown MAIDA'S in a script form, a serif form and a non-serif form.

44. All of the products and services listed by Counterclaim Defendant in its U.S. Trademark Registration Nos. 5348998 and 5348999 as associated with the registered "Maida's" marks are the same as those that Counterclaim Plaintiff had been offering, or that were (and continue to be) in the zone of natural expansion and/or of consumer recognition of Counterclaim Plaintiff's business of providing custom footwear services and associated products, before Counterclaim Defendant's filing of those Trademark Registrations and before Counterclaim Defendant's claimed date of first use of "Maida's." Such associated products often complement the custom made footwear and/or are often made at least in part from left-over materials used in making such footwear. Counterclaim Plaintiff has continued to offer these products and services to the present day.

45. Counterclaim Plaintiff's trademark "Maida's," has a zone of consumer recognition and/or zone of natural expansion throughout the United States.

46. Counterclaim Defendant knew of Counterclaim Plaintiff's ongoing business and use of "Maida's" as its tradename and trademark at the time Counterclaim Defendant filed its applications to register "MAIDA'S" with the United States Patent and Trademark Office. At that same time, Counterclaim Defendant knew of Counterclaim Plaintiff's longstanding and continued use of "Maida's" as a tradename and a trademark, and Counterclaim Defendant was knowledgeable of Counterclaim Plaintiff's services and products, and notoriety for those services and products. Counterclaim Defendant knew that Counterclaim Plaintiff made and sold accessories associated with Counterclaim Plaintiff's custom and bespoke shoes and boots and that such accessories were the same as and/or overlapped with the products and services that Counterclaim Defendant was listing as associated with its alleged "Maida's" marks in the trademark applications. Counterclaim Defendant knew that Counterclaim Plaintiff often represented "Maida's" in script form substantially like the form Counterclaim Defendant had copied and sought to register.

47. Nevertheless, Counterclaim Defendant falsely, or at least in reckless disregard of the truth, stated in each of the trademark applications to the United States Patent and Trademark Office for the registrations of "MAIDA'S" that, "The mark has become distinctive of the goods/services through the applicants [sic] substantially exclusive and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least the five years immediately before the date of this statement [which was December 21, 2016, the date Counterclaim Defendant filed the applications]." Counterclaim Defendant made this statement knowing it to be a material, false or inaccurate representation, intending to deceive the United

24

States Patent and Trademark Office as to Counterclaim Defendant's entitlement to the registrations so as to cause the United States Patent and Trademark Office to allow the applications to issue as registrations. Counterclaim Defendant knew that this statement, albeit false or inaccurate, would provide it with the requisite "secondary meaning" that it would need to overcome an expected rejection by the Trademark Examiner of the applications on grounds of descriptiveness of the "Maida's" mark, because "Maida's" was a surname, and the apostrophe "s" signaled that it was primarily a surname. 15 U.S.C. § 1052(e)(4) and 15 U.S.C. § 1052(f).

48. Resultingly, through committing fraud on the United States Patent and Trademark Office, Counterclaim Defendant obtained U.S. Registration No. 5,348,998 for the word mark "MAIDA'S" written in any style font, and U.S. Registration No. 5,348,999 for the word mark *Maida's* in stylized script. Trademark registrations obtained under these circumstances should be held invalid.

49. Further, "MAIDA'S" as a trademark is in fact descriptive as "primarily merely a surname" and not registrable under the Lanham Act. 28 U.S.C. § 1052(e)(4).

50. Counterclaim Defendant's own principal's surname is "Maida's."

51. The apostrophe "s" in "Maida's" indicates that "Maida" is a surname.

52. Counterclaim Defendant's actions have given rise to an actual and justiciable controversy pursuant to 28 U.S.C. § 2201 et seq.

53. Counterclaim Plaintiff seeks a declaration that Counterclaim Defendant's U.S. Trademark Registration Nos. 5348998 and 5348999 are invalid, and that "Maida's" is primarily merely a surname and is not registrable in any font as a trademark of Counterclaim Defendant.

54. Counterclaim Plaintiff has been forced to defend this federal action for alleged infringement of registered trademarks, unfair competition, and unjust enrichment of

25

Counterclaim Defendant. Thus, Counterclaim Plaintiff has been injured by Counterclaim Defendant's misrepresentations.

**THIRD COUNTERCLAIM**
**Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125(a)**

55.     Counterclaim Plaintiff hereby incorporates by reference and re-alleges its allegations of Paragraphs 1-54, inclusive, as though fully set forth.

56.     Although Counterclaim Defendant's principal has a last name, or surname, "Maida," and is a relative of Counterclaim Plaintiff's principals and some persons associated and affiliated with Counterclaim Plaintiff, Counterclaim Defendant's father and grandfather pursued shoe repair at a company called "Houston Shoe Hospital."

57.     Counterclaim Plaintiff, on the other hand, has principals, associates and affiliates, and predecessors-in-interest, over five to six generations, who have used their last name, "Maida," and the tradename and trademark "Maida's" in offering custom made leather boots and shoes and related accessories such as matching or complementing belts, ammunition bags, wallets, billfolds, key fobs, purses, handbags, pocketbooks, hat bands, bolo ties, dog collars, and items made from leather left-over from making footwear, since about 1907.

58.     As the believed oldest custom boot and shoe maker in the United States, who has fitted boots and shoes on a number of nationally known celebrities over the years, Counterclaim Plaintiff, itself and through its predecessors, has built up considerable public interest, and notoriety, in its markets throughout the United States.

59.     Counterclaim Plaintiff and its predecessors-in-interest have caused their family name "Maida" and the tradename and trademark "Maida's" to be known to the consuming public as a source of quality, hand made leather goods, particularly custom made footwear and related accessories.

60. Counterclaim Defendant, in offering belts and buckles to the public and having a family tie or relationship to the Counterclaim Plaintiff "Maida's" family, has sought to appear to the public as Counterclaim Plaintiff or as directly from Counterclaim Plaintiff's family to benefit from their reputation of skill in custom made leather goods.

61. Counterclaim Defendant has adopted for the homepage on its website at <www.maidasbelts.com> the same old photograph showing Counterclaim Plaintiff's patriarch, Salvator "Sam" Maida, that Counterclaim Plaintiff uses in the history section on its website at <www.maidas.com>. That patriarch immigrated to the United States in 1883 from Italy and became a respected custom boot and shoe maker in Houston, Texas. Counterclaim Defendant also has a "history" section on its website similar to the "history" section on Counterclaim Plaintiff's website. These website similarities imply a relationship between the businesses of the parties where none exists. See Exhibit 13.

62. Counterclaim Defendant also shows "Maida's" on its website home page in a script substantially like the script that Counterclaim Plaintiff has long used in its signage, showing "Maida's."

63. Counterclaim Defendant has also adopted "Maida's" signage for its storefront, implying to the consuming public that it is another of Counterclaim Plaintiff's "Maida's" storefronts, or at least suggesting an affiliation with Counterclaim Plaintiff, where there is none.

64. Counterclaim Defendant, selling primarily belts, buckles and related jewelry, misleads in its website presentation and its signage that it is Counterclaim Plaintiff or is an affiliate or otherwise associated with Counterclaim Plaintiff, when it is not.

65. To further its deception, Counterclaim Defendant has registered as its own with the United States Patent and Trademark Office "Maida's" as a trademark in any word form and

in a stylized script form substantially like that long used by Counterclaim Plaintiff. In such registrations, Counterclaim Defendant has made misrepresentations that it has substantially exclusive use of "Maida's" as a trademark for belts and a number of other goods that Counterclaim Plaintiff makes or that are in Counterclaim Plaintiff's zones of natural expansion and public recognition. Counterclaim Defendant has further misrepresented that "Maida's" has become distinctive as to it, when "Maida's" has not.

66. Counterclaim Defendant is deceiving or likely deceiving a substantial portion of the consuming public into thinking that Counterclaim Defendant's belts are made by Counterclaim Plaintiff who itself and through its predecessors have been making high quality belts to match or complement high quality custom made boots or shoes for generations.

67. Counterclaim Defendant's deception is material as it is likely to influence members of the consuming public to purchase belts and other merchandise from Counterclaim Defendant.

68. Counterclaim Defendant is usurping and free-riding or otherwise unfairly benefitting from Counter Plaintiff's goodwill and reputation as a fine leather craftsman and maker of high quality leather goods.

69. Counterclaim Defendant's misleading representations and material deception are occurring in interstate commerce.

70. Counterclaim Defendant's actions have resulted in members of the consuming public entering Counterclaim Defendant's storefront or website on the internet at <www.maidasbelts.com> and purchasing belts and other goods, thinking they were purchasing them from Counterclaim Plaintiff, causing commercial or competitive injury to Counterclaim Plaintiff.

71. Counterclaim Defendant's actions have resulted in members of the consuming public seeking Counterclaim Plaintiff to accept returns or make repairs of belts and other merchandise those consumers purchased from Counterclaim Defendant thinking they were purchasing them from Counterclaim Plaintiff, causing commercial or competitive injury to Counterclaim Plaintiff.

72. Counterclaim Defendant's actions have resulted in the press picking up Counterclaim Defendant's name for printing in a story about work actually done by Counterclaim Plaintiff, resulting in increased business for Counterclaim Defendant and loss of opportunity for Counterclaim Plaintiff. See https://www.pressreader.com/usa/houston-chronicle-sunday/20160410/283875867323590, copied at Exhibit 14.

73. Counterclaim Defendant's foregoing acts constitute unfair competition in violation of Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a).

74. Counterclaim Defendant's unfair competition has caused and is continuing to cause great and irreparable harm and damage to Counterclaim Plaintiff and unless permanently restrained and enjoined by the Court, such irreparable harm will continue. Counterclaim Plaintiff has no adequate remedy at law.

75. As a direct and proximate result of Counterclaim Defendant's wrongful acts, Counterclaim Plaintiff has suffered and will continue to suffer irreparable damage to its tradename and mark "Maida's, its business reputation, and goodwill. Plaintiff has no adequate remedy at law and is entitled to an injunction restraining Counterclaim Defendant, its officers, employees, and all persons acting in concert with Counterclaim Defendant, from engaging in further acts of unfair competition as described.

**REQUEST FOR RELIEF**

29

WHEREFORE, in consideration of the foregoing, Defendant and Counter Plaintiff, Lasting Designs, LLC, d/b/a Maida's, respectfully requests that this Court enter an Order granting it the following relief:

(a)	Dismissing the Complaint with prejudice and granting judgment in favor of Lasting Designs, LLC, d/b/a Maida's;

(b)	Entering a Declaratory Judgment that Lasting Designs, LLC's use of "MAIDA'S" is a fair use and not in violation of the Lanham Act;

(c)	Entering a Declaratory Judgment that Maida's Belts and Buckles, Inc.'s United States Trademark Registration Nos. 5348998 and 5348999 are both invalid and ordering the United States Patent and Trademark Office to cancel both registrations;

(d)	Entering a Judgment against Maida's Belts and Buckles, Inc. for unfair competition and awarding damages for same as will be determined at trial and a permanent injunction against further misrepresentations and deceptions constituting such unfair competition;

(e)	Awarding Lasting Designs, LLC, d/b/a Maida's its attorneys' fees, because of the exceptional nature of this case;

(f)	Awarding Lasting Designs, LLC, d/b/a Maida's its costs in connection with this litigation; and

(g)	Granting Lasting Designs, LLC, d/b/a Maida's such other and further relief as the Court may deem just.

## DEMAND FOR JURY TRIAL

Defendant, Lasting Designs, LLC, d/b/a Maida's, demands trial by jury on all issues so triable.

Respectfully submitted,

30

Date:  April 26, 2022

*/s/ Karen B. Tripp*
Karen B. Tripp, *Attorney at Law*
Texas State Bar No.: 03420850
Southern Dist. of Texas No. 2345
4265 San Felipe, Suite 1100
Houston, Texas 77027
(713) 658-9323 office phone
(832) 798-7576 cell phone
(713) 968-9888 fax phone
ktripp@tripplaw.com
tripp.karen@gmail.com
ATTORNEY IN CHARGE
FOR DEFENDANT,
LASTING DESIGNS, LLC,
d/b/a MAIDA'S

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2022, the foregoing **DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT** was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to Plaintiff's Attorney Paul S. Beik, having an email address of paul@beiklaw.com and complete mailing address of:

BEIK LAW FIRM, PLLC
Paul S. Beik
8100 Washington Ave., Suite 1000
Houston, TX  77007
Attorney for Plaintiff,
Maida's Belts and Buckles, Inc.

*/s/Karen B. Tripp*

Karen B. Tripp