**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MAIDA'S BELTS AND BUCKLES, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:22-cv-577 |
| | § | |
| LASTING DESIGNS, LLC d/b/a MAIDA'S, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## VERDICT FORM

**You will use the following instructions to answer Questions 1, 2, and 3.**

### QUESTION 1

I just instructed you that the party bringing the infringement claim must prove (1) that the surname "Maida" is a valid, protectable trademark; and (2) that the party bringing the infringement claim owns the "Maida's" mark as a trademark.

Because the Plaintiff in this case has presented evidence of its federal trademark registrations, there are certain legal presumptions that may impact your analysis of the Plaintiff's claims.

One way for the Plaintiff to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate. These presumptions in favor of the owner created by the certificate of registration can be overcome or rebutted only by certain types of evidence that I will describe to you later.

Plaintiff asserts that it is the owner of the following two trademarks and corresponding federal U.S. Trademark Registrations:

8

**1) The Maida's Word Trademark.** Plaintiff claims rights to this trademark under Texas common law and under federal law. Plaintiff owns a federal trademark registration (U.S. Registration No. 5,348,998) for this trademark, which has been admitted as **Plaintiff's Exhibit 2** in this trial.

I will refer to this trademark as the "Maida's Word Trademark." This trademark is pictured below.



**2) The Maida's Stylized Font Trademark.** Plaintiff claims rights to this trademark under Texas common law and under federal law. Plaintiff owns a federal trademark registration (U.S. Registration No. 5,348,999) for this trademark, which has been admitted as **Plaintiff's Exhibit 3** in this trial.

I will refer to this trademark as the "Maida's Stylized Font Trademark." This trademark is pictured below.



\*\*\*

Plaintiff must prove infringement of each asserted mark independently of each other. Both of the Plaintiff's federal trademark registrations for both the "Maida's Word Trademark" and the "Maida's Stylized Font Trademark" specify the goods associated with this mark as:

1. "Boxes of precious metal; Cuff links; Gemstone Jewelry; Key chains as jewelry; Slides for bolo ties" in Class 14.
2. "Money Clips" in Class 16.
3. "Belts; Hat bands" in Class 25.
4. "Belt Buckles; Belt clasps" in Class 26.

9

5. "Retail store services featuring knives, clothing belts, belt buckles, cuff links, jewelry" in Class 35.

6. "Custom manufacture of clothing belts, belt buckles, cuff links, money clips, jewelry" in Class 40.

The Plaintiff's registered trademarks result in certain legal presumptions that apply in this lawsuit. Here, Plaintiff's federal trademark registrations are evidence that:

(1) the registered marks are valid, legally protectable marks;

(2) that Plaintiff owns the registered marks; and

(3) that the mark at issue has acquired secondary meaning as of the date of registration (December 5, 2017).

These presumptions are rebuttable by the Defendant. The Defendant can contest the registrations, and it is doing so in this lawsuit.

10

## QUESTION 1

**Special Instructions Regarding Question 1**

First, Defendant alleges that Plaintiff made a false, material representation in its trademark applications that the Maida's Word Trademark and the Maida's Stylized Font Trademark were substantially exclusive in use to Plaintiff when they were not.

A trademark registration is not valid if it was obtained through a false or fraudulent filing. Defendant must prove by clear and convincing evidence that:

1. Maida's Belts and Buckles knowingly made a false representation of fact to the U.S. Patent and Trademark Office;

2. The false representation was made with an intent to deceive; and

3. The false representation was material in the sense that the U.S. Patent and Trademark Office would not have issued or maintained the registration in the absence of the false representation.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established. It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy.

The Defendant, Lasting Designs, has the burden to prove by clear and convincing evidence that Maida's Belts and Buckles obtained or maintained its trademark registrations through a false or fraudulent filing.

11

**Question 1 (The Burden of Proof is on the Defendant)**

Do you find that Defendant has proved by clear and convincing evidence that Plaintiff Maida's Belts and Buckles' registrations for the Maida's Word Trademark and the Maida's Script Trademark were procured or maintained through a fraudulent filing in the U.S. Patent and Trademark Office?

Answer "Yes" or "No" for each registered trademark:

Maida's Word Trademark:                    _YES_

Maida's Stylized Font Trademark:        _YES_

**If you answered "Yes," to both parts of Question 1, skip Questions 2, 3, and 4, and go to Question 5. If you answered "No," to either part of Question 1, go to Question 2.**

## QUESTION 2

**Special Instructions Regarding Question 2**

In its second challenge, Defendant alleges that Plaintiff's registered trademarks are invalid because "Maida's" is a non-distinctive, descriptive term and Maida's Belts and Buckles had not acquired secondary meaning in either registered mark as of the registration date of the two marks (December 5, 2017).

As I instructed you before the evidence was presented, a trademark is any word, name, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods. Both Maida's Belts and Buckles and Lasting Designs are "persons" as that term is used in these instructions.

In order to be legally protectable by trademark law, a designation must be capable of distinguishing one's goods from those of another. This means that a designation is protectable as a trademark only if the designation is "distinctive."

The term "distinctive" is a key term of art in trademark law. The word sometimes causes misunderstanding because it does not have the same connotation that it has in everyday speech. If a designation is not "distinctive," it is not a "mark." Without achieving distinctiveness, then a designation does not have the legal status of a "trademark." Depending on the mark at issue, distinctiveness can either be inherent, or distinctiveness can be achieved through secondary meaning, which is another term of art I will explain shortly. In short, if there is no distinctiveness, there is no mark for trademark law to protect.

Marks are classified along a spectrum in order of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. Word marks that are suggestive, arbitrary, or fanciful are inherently distinctive. A generic term refers to the class of which a good is a member. Most important to this case, are "descriptive" terms. A surname is generally considered to be a "descriptive" term.

A "descriptive" term is one that directly describes a quality, appearance, or characteristic of a product. "Descriptive" terms are not inherently distinctive because terms that describe a quality or appearance of a product do not per se identify and distinguish a given seller's product.

13

As a result, a term that is primarily merely a surname is not protectable based upon mere adoption and use. In addition to adoption and use, a surname requires secondary meaning to achieve the status of "trademark." This means that someone cannot acquire the right to exclude others from using a surname as a trademark unless the mark has developed a secondary meaning in the minds of prospective consumers.

### i.   Secondary Meaning

The concept of "secondary meaning," or as it is sometimes called, "acquired distinctiveness," is an important term of art in trademark law. If a designation is not "distinctive," it is not a "mark." Therefore, "acquiring distinctiveness" means acquiring the status of trademark.

Through "acquired distinctiveness" or "secondary meaning" the law recognizes the psychological effect of trade symbols upon a buyer's mind. It is a type of mental association in buyers' minds between the alleged mark and a single commercial source of the product. This acquired association is referred to as "secondary meaning." It is a new and additional meaning that attaches to a word or symbol in such a way that its primary significance in the minds of prospective consumers is not the product itself, but the identification of the product with a single source.

The following seven factors are relevant to determining whether a trademark has developed a secondary meaning:

1. *The Length and Manner of Use of the Mark.*

Extensive periods of use can make a mark more likely to have acquired secondary meaning, but length of time alone is not always sufficient to establish secondary meaning. There is no fixed rule as to the length of time a symbol must be in use before it can achieve secondary meaning.

2. *Sales Volume.*

Proof of a significant number of sales of goods using the alleged mark can be relevant to the secondary meaning inquiry.

14

### 3. Amount and Manner of Advertising.

The amount and manner of advertising is relevant not necessarily focused on the *extent* of the promotional efforts, but those efforts' *effectiveness* in altering the meaning of the mark to the consuming public.

### 4. The Nature of the Use of the Mark in Newspapers and Magazines.

To what extent third-party media have reported on the purported trademark and whether these publications impacted public perception of the trademark can be considered.

### 5. Consumer-Survey Evidence.

Survey evidence can demonstrate the mental associations of the relevant purchasing class. However, survey evidence is not necessary to prove secondary meaning. In this case, neither side produced this kind of survey evidence.

### 6. Direct Consumer Testimony.

In this case, neither side produced direct consumer testimony.

### 7. Defendant's intent in copying the mark.

For this factor, the relevant inquiry is whether the alleged infringer intended to derive benefits from the party claiming infringement's reputation by using the mark at issue. This factor might weigh in favor of secondary meaning where an alleged infringer has intentionally copied the party claiming infringement's mark, believing use of that party's mark could influence consumers.

The presence or absence of any factor does not necessarily resolve whether a mark has gained secondary meaning.

15

**Question 2 (The Burden of Proof is on the Defendant)**

Do you find that Defendant has proved by a preponderance of the evidence that Maida's Belts and Buckles did not establish secondary meaning in association with the 6 categories listed on pages 10–11 of these instructions as of the registration date (December 5, 2017)?

Answer "Yes" or "No" for each registered trademark that you answered "No" for in Question 1:

Maida's Word Trademark: _____

Maida's Stylized Font Trademark: _____

**If you answered "Yes," to both parts of Question 2, skip Questions 3 and 4, and go to Question 5. If you answered "No," to either part of Question 2, go to Question 3.**

## QUESTION 3

**Special Instructions Regarding Question 3**

Third, Defendant claims that it is the senior user, or owner, of the "Maida's" mark, so Plaintiff's registration is invalid.

Neither application for nor registration of a mark at the federal level wipes out the prior non-registered, common-law rights of others. In other words, the nonregistered rights of a senior user continue and are not erased by the later federal registration of a junior user.

In this trademark dispute, Plaintiff and Defendant dispute which party is the senior (oldest) user of the Maida's marks in association with belts and buckles. Plaintiff claims it is the senior user, and Defendant claims it is the senior user.

### i.    How a Trademark is Obtained

A person typically acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer. Rights in a trademark are obtained only through commercial use of the mark.

However, to acquire a trademark for all designations which are not inherently distinctive, such as a surname, the law requires an additional step on top of commercial use of the mark. A non-inherently distinctive designation, like a surname, requires proof of secondary meaning for that mark to be considered distinctive, and thus to receive protection of trademark law.

### ii.    Trademark Priority Disputes

The basic rule of trademark ownership in the United States is priority of use. Because non-inherently distinctive marks, like surnames, require secondary meaning to be valid, ownership goes to the first entity who commercially uses the mark and acquires secondary meaning. The owner of a mark is referred to as the "senior user."

A priority dispute in trademark law occurs when two parties claim that they are the senior user of a trademark, and thus they are the trademark owner and have the right to exclude others from using the mark at issue. When there is a priority dispute over a "descriptive" mark (such as a surname), the concept of secondary meaning is important.

17

To establish its status as the senior user, the party claiming to be the senior user must not only prove its commercial use of the mark but also the existence of a secondary meaning in the mark by the time and place that the junior user first began use of the accused mark. If the senior user cannot prove that its mark possessed secondary meaning at the time the other party commenced its use, there can be no infringement, for if there was no secondary meaning, there was no likelihood of confusion when the junior user arrived on the scene.

"Secondary meaning" has the same definition as the one set out in the **Special Instructions Regarding Question 2** above. You should follow that same instruction here.

### iii.　Assignment of Trademark Interests

The owner of a trademark may transfer, give, or sell to another person the owner's interest in the trademark. This type of agreement is called an assignment, and the person who receives the owner's interest is called an assignee and becomes the owner of the mark. An assignee has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion in the marketplace. To be enforceable, the assignment must include the goodwill of the business connected with the trademark.

A trademark assignee may enforce the right to exclude others in an action for infringement or unfair competition.

In order to enjoin junior users from using a mark, the senior user's use must be continuous and without abandonment, although some evolution in use over time is tolerated. If owners have changed, one way to demonstrate continuous use is through an assignment of trademark rights. In order to become a senior user through the valid assignment of a mark, the party claiming assignment must trace its title through a valid chain of title, which consists of an unbroken line of use and good will going back to the date of the mark's first use.

18

**Question 3 (The Burden of Proof is on the Defendant)**

Do you find that Defendant has proved by a preponderance of the evidence that Plaintiff was **not** the senior user, or owner, of the two registered trademarks as of the registration date (December 5, 2017)?

Answer "Yes" or "No" for each registered trademark that you answered "No" for in Question 2:

Maida's Word Trademark:              _____
Maida's Stylized Font Trademark:     _____

**If you answered "No" to all parts of Question 3, go to Question 4. If you answered "Yes" to any parts of those Questions, do not answer Question 4, and go to Question 5.**

19

If you answered "No" to all parts of Question 3, go to Question 4. If you answered "Yes" to any parts of those Questions, do not answer Question 4, and go to Question 5.

## QUESTION 4

**Special Instructions Regarding Question 4**

The final element of trademark infringement is likelihood of confusion. The Plaintiff must prove by a preponderance of the evidence that the Defendant used the "Maida's" mark or a mark similar to the "Maida's" mark without the consent of Plaintiff in a manner that is likely to cause confusion in the minds of potential consumers as to the source, affiliation, or sponsorship of the goods.

Likelihood of confusion means a probability of confusion, which is more than a mere possibility of confusion. You must consider whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the goods bearing one of the marks.

I will suggest some factors you should consider. You should not focus on any one factor to resolve whether there was a likelihood of confusion, because you must consider all relevant evidence. As you consider the likelihood of confusion you should examine the following:

In determining whether the party claiming infringement has proven by a preponderance of the evidence that there is a likelihood of confusion with respect to the source, affiliation, or sponsorship of the Maida's brand sold by the alleged infringer, you should consider the following factors, known as "digits of confusion," separately as to each allegedly infringed mark. I will briefly explain each digit of confusion in turn.

### 1. The type and strength of each allegedly infringed mark.

The strength or distinctiveness of a mark determines the amount of protection the mark receives. Generally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark. A party can show that a mark is strongly recognized in the marketplace based on extensive advertising, length of time in business, public recognition, uniqueness, and the quantity of sales of the branded products. A strong trademark is one that consumers are likely to associate with the owner of the mark, and is rarely used by parties other

20

than the trademark owner, while a weak trademark is one that is not well recognized or is often used by other parties. In short, the more distinctive a trademark, the greater its strength.

A trademark's strength is important in determining the scope of protection that it receives. The greater the number of identical or similar trademarks already used on different kinds of goods, the weaker the trademark and the lower the likelihood of confusion. You should consider all third-party use and third-party U.S. trademark registrations, and not just use in the same industry, to determine whether a mark is weak or strong. A mark that is widely used on a variety of commercial goods is a weaker mark and entitled to a narrower range of protection.

### 2. The similarity between Plaintiff's and Defendant's respective marks, if any.

The similarity of marks is determined by comparing their appearance, sound, and meaning. This factor focuses not on whether the marks are identical, but on whether they are sufficiently similar that consumers are likely to believe that the party claiming infringement's product is somehow associated with the alleged infringer. A mark must be viewed in its entirety and in the context in which it is used in the marketplace, including how and where it is used on product packaging, labeling, and advertising. It is the overall impression of the mark that counts. You should not dissect the marks to compare individual features. Although more attention should be given to the dominant portion of the marks, the use of the same dominant words does not automatically equate to similarity between marks. Similarity of appearance is determined on the basis of the total effect of the trademark, rather than on a comparison of individual features.

### 3. The similarity of the products or services supplied by the party claiming infringement and the product or services supplied by alleged infringer under their respective marks.

The greater the similarity of the products or services, the greater the likelihood of confusion. Competition between the parties' products or services is not necessary for consumers to confuse them. When a company is diversified, that is, offers a number of different goods and services, that makes it more likely that a potential consumer would associate a non-diversified company's services with the diversified company. Products that are often used or sold together, or complementary, are particularly susceptible to confusion. Products are also complementary when each product is useless without the other.

Even when products or services do not compete, there can be confusion as to sponsorship, affiliation, or connection. The danger of affiliation or sponsorship confusion increases when the more recent, or junior, user's goods are in a market into which the longer-time, or senior, user would naturally expand. A party claiming infringement can show that an alleged infringer's products fall within its natural zone of expansion by showing that its customers believe it to be in that zone, even if that perception is false.

### 4. The identity of retail outlets and purchasers of the products or services supplied by Plaintiff and Defendant under their respective marks.

The fourth digit to consider in analyzing likelihood of confusion is whether there is overlap between the parties' retail outlets and consumers. The greater the overlap between the parties' retail outlets and consumers, the greater the likelihood of confusion. On the other hand, dissimilarities between the retail outlets for, and the primary consumers of, plaintiff's and defendants' goods lessen the possibility of confusion, mistake, or deception.

### 5. The identity of advertising media used by Plaintiff and Defendant.

The fifth digit to consider in analyzing likelihood of confusion is whether the parties use the same advertising media, such as websites, social media, magazines and trade journals, trade shows. The greater the similarity of advertising media, the greater the likelihood of confusion.

### 6. The alleged infringer's intent in selecting its mark.

Evidence that an alleged infringer adopted the mark with the intent to derive benefit from the reputation of the party claiming infringement's products is evidence of a likelihood of confusion. But an alleged infringer's mere awareness of the party claiming infringement's existing mark does not establish bad intent.

Even if an alleged infringer adopts a mark with innocent intent, you may find intent to confuse if the alleged infringer subsequently used the mark in a way that evidenced an intent to trade on the party claiming infringement's reputation. Bad faith in adopting and using a trademark normally involves the imitation of packaging material, use of identical code numbers, adopting of similar distribution methods, or other efforts by a party to "pass off" its product as that of another. A party's continued use of a mark even after it receives a cease and desist letter alleging

22

infringement is not evidence of an intent to confuse, because that party may have considered that the allegation was without a legally supportable basis and made a rational business decision to continue use until a court stated otherwise.  If there is no evidence of intent to confuse, this factor is neutral.

### 7.  Any evidence of actual confusion caused by the alleged infringer's use of the Maida's marks.

The seventh digit to consider in analyzing likelihood of confusion is evidence of actual confusion or mistake as to the source, affiliation, or sponsorship of the alleged infringer's products. Actual confusion need not be proven but may be the best evidence of likelihood of confusion. There may be actual confusion if people inadvertently contact the alleged infringer while looking to do business or contact the party claiming infringement, or if people are confused about whether the party claiming infringement is affiliated with the alleged infringer.

In determining the weight to be given to this factor, you should consider the extent to which the type of confusion shown has been or would be likely to sway consumer purchases.  Evidence that confusion in fact swayed consumer purchases is strong evidence of a likelihood of confusion. However, more evidence is required to show a likelihood of confusion when the type of confusion shown did not or cannot sway purchases.

Actual confusion has more weight if it affects a potential consumer considering whether to transact business with Plaintiff or Defendant. To show actual confusion, the party claiming infringement may rely on reported instances of consumer confusion.  However, isolated instances of confusion about the affiliation of two companies that do not result in redirected business are not enough to find actual confusion.  Instances of uncertainty about affiliation or connection should be weighed against each party's volume of business as a whole. The confusion of both retailers and consumers is relevant evidence of actual confusion.

Actual confusion evidence can demonstrate a likelihood of confusion even if confused persons realize their mistake after further investigation.  This is called "initial interest" confusion. A potential consumer may not consider the party bringing infringement's trademarked goods or services even if the confusion with the alleged infringer's goods or services is cleared up. The alleged infringer may have gained the consumer's credibility and obtained the business before or

23

after the confusion is cleared. However, short-lived impressions or a fleeting and quickly corrected mix-up of names is not evidence of actual confusion

### 8. The degree of care exercised by potential purchasers.

Confusion is generally more likely if the products in question are impulse items or are inexpensive. Conversely, a person buying a big-ticket or expensive item is ordinarily expected to be a more careful buyer than the impulse purchaser or the purchaser of a relatively inexpensive item. If there is evidence that consumers use a great deal of care when making purchasing decisions, then they may be less likely to be confused. If the items are expensive and the buyers are sophisticated, then confusion is less likely to occur.

However, even sophisticated purchasers can be confused by similar marks used in the same general field. Additionally, even sophisticated purchasers can be subject to initial-interest confusion. Initial-interest confusion is especially relevant if the parties are direct competitors in the same market.

The weight to be given to the factors depends on the facts and circumstances of each case. The absence or presence of any one of the digits does not determine whether there is, or is not, a likelihood of confusion. You may find a likelihood of confusion even if you find less than a majority of the factors. You may find no likelihood of confusion, even if you find that a majority of the factors are present. These digits of confusion are flexible and do not apply mechanically or to every case. These digits serve only as guides, not as an exact calculus. You must consider the application of each digit in light of the specific facts and circumstances of the evidence in this case, and you must consider the marks in the context that a consumer perceives them in the marketplace.

You may determine how much weight to give each factor. Some factors may be determined to not be given any weight at all.

24

If you answered "No" for a registered trademark in Question 3, answer Question 4 with respect to that registered trademark. If you answered "Yes" for a registered trademark in Question 3 do not answer Question 4 with respect to that registered trademark. If you answered "Yes," to both registered trademarks in Questions 3, skip Question 4, and go to Question 5.

**Question 4 (The Burden of Proof is on the Plaintiff)**

Do you find that Maida's Belts and Buckles has proved by a preponderance of the evidence that Defendant Lasting Designs used the "Maida's" mark or a mark similar to the "Maida's" mark without the consent of Plaintiff in a manner that is likely to cause confusion in the minds of potential consumers as to the source, affiliation, or sponsorship of the goods?

Answer "Yes" or "No" for each registered trademark:

Maida's Word Trademark:                    _____

Maida's Stylized Font Trademark:        _____

**If you answered "No," as to both registered trademarks, skip Questions 5, 6, 7, 8, and 9, and go to Question 10. If you answered "Yes" to either registered trademark in Question 4, skip Questions 5, 6, and 7, and go to Question 8.**

You should only answer Question 5 if you answered "Yes" to either part of Question 1, Question 2, or Question 3.

## QUESTION 5

**Special Instructions Regarding Question 5**

Plaintiff has also brought a claim for unregistered trademark infringement, which shares the same elements as its trademark infringement claim; however, no legal presumptions apply here.

To satisfy the first element of an unregistered trademark infringement claim, the party bringing the trademark infringement claim must prove by a preponderance of the evidence that the surname "Maida" is a valid, protectable trademark.

As I instructed you before, a term that is primarily merely a surname is generally considered a "descriptive" term in trademark law, meaning it is not protectable based upon mere adoption and use. A party seeking to bring a trademark infringement claim in regards to a surname trademark must demonstrate by a preponderance of the evidence that the surname has developed secondary meaning.

"Secondary meaning" has the same definition as the one set out in the **Special Instructions Regarding Question 2** above.

**Question 5 (The Burden of Proof is on the Plaintiff)**

Do you find that Plaintiff Maida's Belts and Buckles has proved by a preponderance of the evidence that the last name "Maida's" is a valid, protectable mark for the products it sells?

Answer "Yes" or "No": ___*YES*___

**If you answered "No," to Question 5, skip Questions 6, 7, 8, and 9, and go to Question 10. If you answered "Yes" to Question 5, go to Question 6.**

27

## QUESTION 6

**Special Instructions Regarding Question 6**

To satisfy the second element of its unregistered trademark infringement claim, Plaintiff must prove by a preponderance of the evidence that it owns the "Maida's" mark as a trademark.

In trademark law, priority of use equates to ownership, meaning the party that is the senior user holds ownership rights of the trademarks. With respect to trademarks consisting of surnames, the senior user is the first user who not only uses the mark but also who first establishes secondary meaning. In this trademark dispute, Plaintiff and Defendant dispute which party is the senior (oldest) user of the Maida's marks in association with belts and buckles. Plaintiff claims it is the senior user, and Defendant claims it is the senior user.

I have already set out the law regarding how to determine which party is the senior user in the **Special Instructions Regarding Question 3** above. You should follow those same instructions here.

28

**Question 6 (The Burden of Proof is on the Plaintiff)**

Do you find that Plaintiff Maida's Belts and Buckles has proved by a preponderance of the evidence that it developed secondary meaning in the Maida's mark in association with belts and buckles *before* Lasting Designs' first use of the Maida's mark?

Answer "Yes" or "No":  _YES_

**If you answered "No," to Question 6, skip Questions 7, 8, and 9, and go to Question 10. If you answered "Yes" to Question 6, go to Question 7.**

## QUESTION 7

**Special Instructions Regarding Question 7**

The final element of Plaintiff's claim unregistered trademark infringement claim is likelihood of confusion. Plaintiff must prove by a preponderance of the evidence that the Defendant used the "Maida's" mark or a mark similar to the "Maida's" mark without the consent of the Plaintiff in a manner that is likely to cause confusion in the minds of potential consumers as to the source, affiliation, or sponsorship of the goods.

"Likelihood of confusion" has the same definition as the one set out in the **Special Instructions Regarding Question 4** above. You should follow that same instruction here.

30

**Question 7 (The Burden of Proof is on the Plaintiff)**

Do you find that Plaintiff Maida's Belts and Buckles has proved by a preponderance of the evidence that Defendant used the "Maida's" mark or a mark similar to the "Maida's" mark without the consent of Plaintiff in a manner that is likely to cause confusion in the minds of potential consumers as to the source, sponsorship, affiliation, or approval of the goods?

Answer "Yes" or "No": _YES_

**If you answered "No," to Question 7, skip Questions 8 and 9, and go to Question 10. If you answered "Yes" to Question 7, go to Question 8.**

31

If you answered "Yes" to Question 4 or Question 7, you must answer certain other questions. Lasting Designs claims that it is not liable to Maida's Belts and Buckles for trademark infringement because one or more of the following defenses exist. Lasting Designs has the burden of proving its defenses to trademark infringement by a preponderance of the evidence.

## QUESTION 8

**Special Instructions Regarding Question 8**

Defendant contends that, even if Plaintiff could prevail on one or more of its trademark claims against Defendant, Plaintiff is not entitled to any recovery or relief on any of those claims under what is known as the defense of fair use. A defendant makes fair use of a descriptive trademark when the defendant does not use it as a trademark, but instead to accurately describe aspects of the defendant's own product or service.

Defendant has the burden of proving its fair use of the marks by a preponderance of the evidence. Defendant must show that it used the mark fairly and in good faith, to describe its own goods or services. The fair-use defense does not apply if Defendant literally used Plaintiff's mark as its own trademark to identify Defendant's goods or services, but the fair use of a term may be protected even if some residual confusion is likely.

**Question 8 (The Burden of Proof is on the Defendant)**

Do you find that Defendant Lasting Designs has proved by a preponderance of the evidence that it used the Maida's marks fairly and in good faith not as a trademark but instead to accurately describe its own goods?

Answer "Yes" or "No": ___YES___

**If you answered "No," to Question 8, go to Question 9. If you answered "Yes" to Question 8, go to the end of the verdict form where the foreperson should sign and date the verdict.**

33

## QUESTION 9

**Special Instructions Regarding Question 9**

If you find that there is infringement of a trademark or that a party engaged in unfair competition, you must also decide whether that party acted "willfully."

You may find that a party acted willfully if you determine that the party acted voluntarily and intentionally and with the specific intent to cause confusion, to cause mistake, or to deceive.

**Question 9**

Do you find that Plaintiff Maida's Belts and Buckles has proved by a preponderance of the evidence that Defendant acted voluntarily and intentionally with intent to cause confusion, to cause mistake, or to deceive by the use of the mark "Maida's"?

Answer "Yes" or "No": _____

**Go to the end of the verdict form where the foreperson should sign and date the verdict.**

**QUESTION 10**

**Special Instructions Regarding Question 10**

Defendant brings a claim for unfair competition under federal law against Plaintiff, which requires proof of the same four elements I have instructed you on before.

Defendant claims its own rights to the "Maida's" surname trademark.

To satisfy the first element of its unfair competition claim, Defendant must prove by a preponderance of the evidence that the surname "Maida" is a valid, protectable trademark.

As I instructed you before, a term that is primarily merely a surname is generally considered a "descriptive" term in trademark law, meaning it is not protectable based upon mere adoption and use. A party seeking to bring a trademark infringement claim in regards to a surname trademark must demonstrate by a preponderance of the evidence that the surname has developed secondary meaning.

"Secondary meaning" has the same definition as the one set out in the **Special Instructions Regarding Question 2** above.

**Question 10 (The Burden of Proof is on the Defendant)**

Do you find that Defendant Lasting Designs has proved by a preponderance of the evidence that the last name "Maida's" is a valid, protectable mark for the products it sells?

Answer "Yes" or "No": _____

**If you answered "No," go to the end of the verdict form where the foreperson should sign and date the verdict. If you answered "Yes" to Question 10, go to Question 11.**

37

## QUESTION 11

**Special Instructions Regarding Question 11**

To satisfy the second element of its unfair competition claim, Defendant must prove by a preponderance of the evidence that it owns the "Maida's" mark as a trademark.

In trademark law, priority of use equates to ownership, meaning the party that is the senior user holds ownership rights of the trademarks. In this trademark dispute, Plaintiff and Defendant dispute which party is the senior (oldest) user of the Maida's marks in association with belts and buckles. Plaintiff claims it is the senior user, and Defendant claims it is the senior user.

I have already set out the law regarding how to determine which party is the senior user in the **Special Instructions Regarding Question 3** above. You should follow those same instructions here.

38

**Question 11 (The Burden of Proof is on the Defendant)**

Do you find that Defendant Lasting Designs has proved by a preponderance of the evidence that it developed secondary meaning in the Maida's mark in association with belts and buckles *before* Maida's Belts and Buckles' first use of the Maida's mark?

Answer "Yes" or "No": _____

**If you answered "No," to Question 11, go to the end of the verdict form where the foreperson should sign and date the verdict. If you answered "Yes" to Question 11, go to Question 12.**

39

## QUESTION 12

**Special Instructions Regarding Question 12**

The final element of Defendant's unfair competition claim is likelihood of confusion. Defendant must prove by a preponderance of the evidence that the Plaintiff used the "Maida's" mark or a mark similar to the "Maida's" mark without the consent of the Defendant in a manner that is likely to cause confusion in the minds of potential consumers as to the source, affiliation, or sponsorship of the goods.

Likelihood of confusion has the same definition as the one set out in the **Special Instructions Regarding Question 4** above. You should follow that same instruction here.

40

## QUESTION 13

**Special Instructions Regarding Question 13**

If you find that there is infringement of a trademark or that a party engaged in unfair competition, you must also decide whether that party acted "willfully."

You may find that a party acted willfully if you determine that the party acted voluntarily and intentionally and with the specific intent to cause confusion, to cause mistake, or to deceive.

**Question 13 (The Burden of Proof is on the Defendant)**

Do you find that Defendant Lasting Designs has proved by a preponderance of the evidence that Plaintiff acted voluntarily and intentionally with intent to cause confusion, to cause mistake, or to deceive by the use of the mark "Maida's"?

Answer "Yes" or "No": _____

**Go to the end of the verdict form where the foreperson should sign and date the verdict.**

43

44

This ends your deliberations. The foreperson should sign and date the verdict.

We, the jury, have unanimously answered the above and foregoing special issues in the manner indicated in this verdict form and return these answers to the Court as our verdict.

**ORIGINAL SIGNATURE ON**
**FILE IN OFFICE OF THE CLERK**
<u>                       </u>        <u>5/14/2026</u>
        FOREPERSON                  DATE

44